## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **Case No. 22-20054-01-DDC** |
| **v.** | |
| **WARREN RICHARDSON (01),** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

This matter comes before the court on Warren Richardson's pro se[1] Motion to Vacate,

Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 (Doc. 74).  Mr. Richardson's motion

does not contest that he committed the acts for which he was charged.  Mr. Richardson has

pleaded guilty to attempted murder of a person assisting federal officers and assault with a

dangerous weapon of a person assisting federal officers.  These charges stemmed from Mr.

Richardson's violent attack of two correctional officers at the CoreCivic Leavenworth Detention

Center in February 2021, where he was detained, pretrial, on another federal charge.

Although his actions are uncontested, and gruesome, Mr. Richardson enjoys a

constitutional right to effective assistance of counsel.  This Order addresses that right as it

pertains to the plea-bargaining stage, which, as the Supreme Court stated, "is not some adjunct to

the criminal justice system; it *is* the criminal justice system." *Missouri v. Frye*, 566 U.S. 134,

144 (2012) (emphasis in original) (quotation cleaned up). Mr. Richardson's motion revolves

---

[1]    People in prison "who proceed pro se . . . are entitled to liberal construction of their filings[.]"
*Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th
Cir. 1991).

around one central argument:  that he was charged and convicted wrongfully under federal law, rather than state law.  This argument, in turn, rests on Mr. Richardson's assertion that the CoreCivic correctional officers were not persons "assisting federal officers" under 18 U.S.C. § 1114—the federal jurisdictional hook for both of his convictions.  Doc. 74 at 5.  According to Mr. Richardson, he is "innocent because the element of a federal crime does not exist." *Id.* (quotation cleaned up).  He asserts that his counsel's failure to raise this argument prejudiced his "right to a fair competent plea." *Id.*  In addition to his ineffective-assistance-of-counsel claims, Mr. Richardson brings a prosecutorial-misconduct claim predicated on the prosecutor's charging decisions. *Id.* at 6.

The court denies Mr. Richardson's motion.  It explains why, below, starting with the relevant background.

## I.  Background

On February 6, 2021, Mr. Richardson was detained as a federal pretrial detainee at the CoreCivic Leavenworth Detention Center (CoreCivic), in Leavenworth, Kansas—a for-profit, private prison.  Doc. 68 at 7 (PSR ¶ 22).  At the time, CoreCivic housed and transported federal pretrial detainees under a contract with the United States Marshals Service (USMS). *Id.*  On that date, Diana Polanco, a CoreCivic correctional officer, opened a door into S-Pod, where Mr. Richardson was housed. *Id.* (PSR ¶ 24).  Mr. Richardson then pushed his way past Ms. Polanco and threw a cup of hot liquid in the face of Marcia Levering, another CoreCivic correctional officer and counselor. *Id.*  He began punching Ms. Levering in the face before taking out a homemade knife and repeatedly stabbing her in the head and torso. *Id.*  Ms. Levering eventually managed to get away from Mr. Richardson and was assisted by several other inmates who guided her to the stairs and tended to her wounds. *Id.*  Once Ms. Levering was out of the picture, Mr. Richardson began attacking Ms. Polanco, punching her to the ground before kicking and

stabbing her in the face.  *Id.* (PSR ¶ 25).  Both women sustained significant injuries which required ongoing medical treatment.  *Id.* at 9 (PSR ¶ 31).

In November 2022, the government charged Mr. Richardson for this violent attack, Doc. 1, and ultimately filed a Superseding Indictment with seven counts, Doc. 45 at 1–5.  In March 2023, the court appointed counsel to assist Mr. Richardson in his case.  *See* Doc. 23.  While awaiting trial, the government offered Mr. Richardson a plea deal under Fed. R. Crim. P. 11(c)(1)(C).  The deal required Mr. Richardson to plead guilty to counts one and four and, in exchange, the government would dismiss the remaining five counts.  Doc. 65 at 5.  The government also agreed to support a sentence of a total of 300 months' imprisonment and three years of supervised release.  *Id.* at 3–4.  Mr. Richardson accepted the plea deal and was convicted of count one (attempted murder of a person assisting federal officers, violating 18 U.S.C. §§ 1113 and 1114) and count four (assault with a dangerous weapon of a person assisting federal officers, violating 18 U.S.C. § 111(a)(l) and 111(b)).  *See generally id.*  On July 12, 2024, the court sentenced Mr. Richardson to 300 months' imprisonment, supervised release for a term of three years, and monetary penalties.  Doc. 72 at 2–3, 7.

On October 7, 2025, Mr. Richardson filed a Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255.[2]  Doc. 74.  It asserted four grounds to support his motion:

(1) Ineffectiveness of counsel, *id.* at 5;

(2) Prosecutorial Misconduct, *id.* at 6;

(3) Counsel's failure to file a motion to dismiss, *id.* at 8; and

---

[2]    While a § 2255 motion generally is subject to a one-year statute of limitations under 28 U.S.C. § 2244(d), the government doesn't raise any timeliness issues in its response to Mr. Richardson's motion. Because our Circuit has held that § 2244(d) is not jurisdictional, the court declines to take up the issue of timeliness here.  *See* e.g., *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) ("It must be remembered that § 2244(d) is not jurisdictional[.]").

(4) Illegal/Involuntary plea based on counsels' ineffectiveness, *id.* at 9. Each of these grounds revolves around one central argument:  Mr. Richardson believes he was charged erroneously with federal crimes because the CoreCivic correctional officers fall outside of the scope of 18 U.S.C. § 1114.  That is, § 1114—which provides that the victim was assisting an officer or employee of the United States—acts as the federal jurisdictional hook for the charges that Mr. Richardson pleaded guilty to committing.  Therefore, if the CoreCivic correctional officers were not assisting such an officer or employee, federal charges would be improper.

Mr. Richardson cites the case of a former fellow inmate at CoreCivic, Emanual Robinson, to support his argument.  According to Mr. Richardson, Mr. Robinson "caught the same charges" as he did, yet Mr. Robinson was "charged under state statutes."  Doc. 74-1.  He also asserts that the two CoreCivic employees he assaulted were private, state employees—not federal employees—and weren't assisting federal employees at the time of the February 2021 attack.  *Id.*  Lastly, Mr. Richardson contends that the Biden administration cancelled all private prison contracts in "2021/2022," including those with CoreCivic Leavenworth.  *Id.*

In subsequent filings, Mr. Richardson has moved to convene an evidentiary hearing (Doc. 82) and appoint counsel because his "life depends on a professional in all the appella[te] proceedings that lie ahead."  Doc. 79 at 1.  The government has filed a Response in Opposition to Defendant's Motion Under 28 U.S.C. § 2255 (Doc. 81).

## II.      Legal Standard

As relevant here, prisoners in federal custody may move to vacate their sentence if such "sentence was imposed in violation of the Constitution or laws of the United States[.]"  28 U.S.C. § 2255(a).  The Sixth Amendment of the United States Constitution guarantees a right to counsel "that extends to the plea-bargaining process."  *Lafler v. Cooper*, 566 U.S. 156, 162

(2012). The Supreme Court has "held 'the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.'" *Id.* at 162–63 (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)); *see also Strickland v. Washington*, 466 U.S. 668 (1984).

Under the *Strickland* test, a defendant must satisfy two prongs to succeed on an ineffective-assistance-of-counsel claim: (1) constitutionally deficient performance and (2) prejudice suffered as a result of that deficient performance. *Strickland*, 466 U.S. at 687. To prevail on the first prong, a defendant "must show 'that counsel's representation fell below an objective standard of reasonableness[.]'" *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Strickland*, 466 U.S. at 688). But there is a "a strong presumption that counsel provided effective assistance." *United States v. Holloway*, 939 F.3d 1088, 1103 (10th Cir. 2019) (quotation cleaned up); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). To "show that his counsel was deficient, [a defendant] must demonstrate that the errors were so serious that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Hanson v. Sherrod*, 797 F.3d 810, 826 (10th Cir. 2015) (quoting *Strickland*, 466 U.S. at 687).

To prevail on *Strickland*'s second prong—prejudice—a defendant "must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 566 U.S. at 163 (quoting *Strickland*, 466 U.S. at 694). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Id.* The defendant must show a "reasonable probability" that the outcome would have changed. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

5

### III.    Analysis

The court will begin by analyzing the core contention on which each one of the four grounds of Mr. Richardson's motion hinge:  that the CoreCivic correctional officers aren't persons assisting an officer or employee of the U.S., as § 1114 requires, and Mr. Richardson asserts, therefore, the government inappropriately charged him under federal statutes.[3]  The court will then apply the *Strickland* test in light of its analysis of Mr. Richardson's § 1114 theory.  The court will conclude with Mr. Richardson's motions for an evidentiary hearing and to appoint counsel.

### A.    Applicability of § 1114 to the CoreCivic Correctional Officers

The statute at issue, 18 U.S.C. § 1114, provides the federal jurisdictional hook in Mr. Richardson's case.  It reads:

> Whoever kills or attempts to kill any officer or employee of the United States . . . while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished . . . in the case of attempted murder or manslaughter, as provided in section 1113.

18 U.S.C. § 1114(a)(3).  At issue here is whether the CoreCivic correctional officers whom Mr. Richardson attacked were persons "assisting such an officer or employee."  "'[T]he type of individual encompassed by § 1114 is a legal question for the court[.]'"  *United States v. Ama*, 97 F. App'x 900, 901 (10th Cir. 2004) (citing *United States v. Martin*, 163 F.3d 1212, 1214 (10th Cir. 1998), *cert. denied*, 526 U.S. 1137 (1999)).  Our Circuit interprets "liberally the meaning of 'while engaged or on account of the performance of official duties' in . . . [§] 1114, recognizing '[e]ach case . . . requires a fact specific analysis, but no case will turn on any one factor.'"  *Id*. at

---

[3]    While Mr. Richardson was convicted of two separate crimes—attempted murder and assault with a dangerous weapon—each conviction hinges on the scope of § 1114.  The text of 18 U.S.C § 111 (assault) incorporates § 1114 (protection of officers and employees of the U.S.) in defining its prohibited conduct.

902 (quoting *United States v. Holder*, 256 F.3d 959, 965 (10th Cir. 2001)).  The "physical presence of a federal agent at the time of the assault is not required" for a victim to qualify under § 1114's protection as one assisting an officer or employee of the United States.  *Id.*

In *Ama*, a city correctional officer was assaulted by a federal pretrial detainee.  The Tenth Circuit held that because the officer "was acting pursuant to a contract to provide assistance to the United States Marshal, whose official duties include housing prisoners awaiting federal trial," the city correctional officer fell within the scope of § 1114.  *Id.  Ama* also approved of a Fifth Circuit case that found § 1114 encompassed a correctional officer employed by a private prison who was assaulted by a federal prisoner.  *Id.* (citing *United States v. Jacquez-Beltran*, 326 F.3d 661 (5th Cir.), *cert. denied*, 540 U.S. 922, 124 (2003)).  *See also United States v. Grant*, 979 F.3d 1141, 1144 (6th Cir. 2020) (holding prison guard at private prison fell within § 1114's ambit and noting that "[e]very one of our sister circuits to consider the issue has read § 1114 to encompass private contractors performing similar federal security functions.").

So too here.  At the time of the attack, according to the plea agreement and PSR, CoreCivic Leavenworth had a contract with the USMS to assist with housing and transporting federal pretrial detainees.  Doc. 65 at 3; Doc. 68 at 7 (PSR ¶ 22).  While Mr. Richardson argues that the CoreCivic "employees [do] not qualify as assisting federal officers . . . especially when no federal officers [were present,]" Doc. 74 at 6, our Circuit is clear:  the "physical presence of a federal agent at the time of the assault is not required."  *Ama*, 97 F. App'x at 902.  Even if the CoreCivic officers oversaw both state and federal detainees at the time of the attack, its dual responsibility wouldn't remove them from the protection of § 1114.  At the time of the attack, the CoreCivic officers were overseeing Mr. Richardson, and he was a federal pretrial detainee.  Thus, at the relevant time, the victims were "acting pursuant to a contract to provide assistance to

the United States Marshal," which, *Ama* found, suffices to bring non-federally employed correctional officers within the scope of § 1114.  97 F. App'x at 901.  Following the holding of *Ama*, and considering our Circuit's approval of *Jacquez-Beltran*, the court holds that the CoreCivic correctional officer-victims, acting pursuant to a contract with USMS, fall squarely within the scope of § 1114 as persons assisting an officer or employee of the United States or an agency thereof.

### B.      The Case of Emanuel Robinson

Mr. Richardson gives much weight to the case of Emanuel Robinson, Doc. 81-1 at 1, a former inmate at CoreCivic, who "caught the same charges" as Mr. Richardson and was "charged under state statutes."  Doc. 74-1.  He devotes almost his entire reply to urging the court to review the case of Mr. Robinson.  *See* Doc. 82 at 1. [4]

While Mr. Richardson is correct that Mr. Robinson was charged under state criminal law for assaulting a correctional officer, the charging decisions in Mr. Robinson's case simply have no effect on this case.  In *United States v. Curtis*, the defendant, like Mr. Richardson, claimed that he was wrongfully charged under federal law instead of state law.  344 F.3d 1057, 1064 (10th Cir. 2003).  Our Circuit rejected this argument as "plainly without merit," noting that it "is settled law that as long as a prosecutor's charging decision is not based on an impermissible factor such as race . . . a prosecutor may exercise broad discretion with respect to his charging decisions."  *Id.*  In the Tenth Circuit under *Curtis*, "prosecutors have discretion in deciding whether to file state or federal charges."  *United States v. Walker*, 576 F. App'x 725, 728 (10th Cir. 2014).

---

[4]      The court has located and reviewed *State v. Robinson*, 579 P.3d 148 (Kan. Ct. App. 2025), *review granted* (Feb. 26, 2026).  While this specific opinion considers a different aspect of Mr. Robinson's case, it is clear to the court that he was convicted under Kansas state law for aggravated battery against correctional officers.

Thus, just as the prosecutor leading Mr. Robinson's case possessed the requisite discretion to file state charges, the prosecutor here possessed such discretion when deciding to file federal charges.  The charging decision in one case doesn't bind future prosecutorial decisions.  Neither decision is necessarily "right" or "wrong."  Because the CoreCivic correctional officers that Mr. Richardson attacked are encompassed by § 1114, the prosecutor had "discretion in deciding whether to file state or federal charges."  *Id.*  Ultimately, Mr. Robinson's charges simply have no effect on those against Mr. Richardson.

### C.    Application of the *Strickland* Test

In grounds one (ineffectiveness of counsel), three (counsel's failure to file a motion to dismiss), and four (involuntary plea based on counsel's ineffectiveness), Mr. Richardson relies on the same core contention:  that the prosecutors should have charged him under state law.[5] Now that the court has evaluated that core contention's legal viability, it will now apply the *Strickland* test to each ground.  Mr. Richardson titles these three grounds differently, but each is an ineffective-assistance-of-counsel claim[6] and, thus, subject to the *Strickland* test.  This test requires a defendant to satisfy two prongs to succeed on an ineffective-assistance-of-counsel claim:  (1) constitutionally deficient performance and (2) prejudice.  *Strickland*, 466 U.S. at 687. Because each ground depends on the sufficiency of a single contention, the court largely will analyze the three together.

---

[5]    *See* Doc. 74 at 5 (Ground One) ("Counsel did not reveal the facts surrounding the litigation factors of a state case vs. a federal indictment[.]"); *Id.* at 8 (Ground Three) (decrying counsel's "failure to file a motion to dismiss" because "these charges should have been state charges"); *Id.* at 9 (Ground Four) ("Counsel did not reveal the facts surrounding the litigation factors of a state vase vs. a federal indictment." (quotation cleaned up)).

[6]    "In the plea context, the cornerstone of ineffectiveness is whether the plea was involuntary because plea counsel's advice was below 'the range of competence demanded of attorneys in criminal cases.'"  *United States v. Spaeth*, 69 F.4th 1190, 1211 (10th Cir. 2023) (quoting *Hill*, 474 U.S. at 56).  *See also Jackson v. United States*, 252 F. App'x 918, 921 (10th Cir. 2007) (discussing ineffective assistance of counsel due to counsel's failure to raise a motion that defendant thought counsel ought to have raised).

Mr. Richardson fails on the first prong of the *Strickland* test:  constitutionally deficient performance.  His lone argument contends that counsel should have argued, via a motion, argument, or advice to Mr. Richardson, that his client was charged inappropriately under federal statutes.  But the "'Sixth Amendment does not require counsel to . . . press meritless arguments before a court.'"  *Sherrill v. Hargett*, 184 F.3d 1172, 1176 (10th Cir. 1999) (quoting *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993)).  And, if an "argument is meritless, it is likely that the failure to raise it was not deficient performance."  *United States v. Babcock*, 40 F.4th 1172, 1177 (10th Cir. 2022).  Given the preceding discussion of prosecutorial discretion and the scope of § 1114, any argument raised by Mr. Richardson's counsel about the charging decisions would have failed as meritless.  Put simply, Mr. Richardson asks the court to hold that his counsel's failure to raise a meritless claim amounts to constitutionally deficient performance.  Because judicial "scrutiny of counsel's performance must be highly deferential," the court declines.  *Strickland*, 466 U.S. at 689.

And even if the court were to assume that Mr. Richardson's counsel owed a duty to challenge the charging decisions, Mr. Richardson's ineffective-assistance-of-counsel claim would fail on *Strickland*'s second prong:  prejudice.  As discussed, this second prong requires a defendant to "'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Lafler*, 566 U.S. at 163 (quoting *Strickland*, 466 U.S. at 694).  In our Circuit, when a claim lacks merit, "the defendant was not prejudiced by the failure to argue the point, thereby defeating the ineffective assistance claim."  *Babcock*, 40 F.4th at 1177.  Because Mr. Richardson's argument was legally unsound, and it remains unsound today, the court wouldn't have dismissed the Indictment had counsel raised it.  Nor would a meritless argument have affected Mr. Richardson's plea.  Mr. Richardson therefore

10

fails the second *Strickland* prong because his counsel's failure to argue a meritless claim to the court or explain a non-viable legal theory to him during plea discussions didn't cause him any prejudice.

Thus, the court finds that Mr. Richardson's ineffective-assistance-of-counsel claims (Grounds One, Three, and Four) of his § 2255 motion fail on both prongs of the *Strickland* test. Having concluded that Mr. Richardson's ineffective assistance arguments don't survive the *Strickland* analysis, the court now turns to Mr. Richardson's sole remaining ground for his § 2255 motion:  prosecutorial misconduct.

### D.       Prosecutorial Misconduct

Mr. Richardson also moves under § 2255 on the grounds of "prosecutorial misconduct, overstepping boundaries that propriety and fairness would characterize [as] illegal proceed[ings.]"  Doc. 74 at 6.  In support of this ground, Mr. Richardson again cites the aforementioned case of Emanuel Robinson, asserting that "CoreCivic employees do not qualify as assisting federal officers.  Especially when no federal officers were present."  *Id*. (quotation cleaned up).  Essentially, Mr. Richardson argues, the prosecution's decision to charge him under federal statutes amounts to prosecutorial misconduct.

Mr. Richardson doesn't assert that he has sustained injury to a specific constitutional right, but our Circuit has recognized that "absent infringement of a specific constitutional right, a prosecutor's misconduct may in some instances render a habeas petitioner's trial 'so fundamentally unfair as to deny him due process.'"  *Littlejohn v. Trammell*, 704 F.3d 817, 837 (10th Cir. 2013) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)).  Charging decisions can violate due process.  A prosecutor can't make charging decisions based on a "defendant's race, sex, religion, or exercise of a statutory or constitutional right."  *United States v. Andersen*, 940 F.2d 593, 596 (10th Cir. 1991).  But, without "proof 'that the choice of forum

was improperly motivated or based on an impermissible classification as a matter of constitutional law, prosecution in a federal rather than a state court does not violate due process[.]'" *United States v. Maxwell*, 966 F.2d 545, 549 (10th Cir. 1992) (quoting *United States v. Williams*, 963 F.2d 1337, 1342 (10th Cir. 1992)).

Mr. Richardson never specifies any prosecutorial misconduct—beyond his citation of Mr. Robinson's case and his inaccurate legal theory that the CoreCivic correctional officers fall outside the scope of § 1114. As the court has already addressed, Mr. Robinson's case and the charging decisions manifested there have no bearing on Mr. Richardson's case. *See above* § III.A.–B. The court reiterates that prosecutors in the Tenth Circuit, "have discretion in deciding whether to file state or federal charges." *Walker*, 576 F. App'x at 728. Mr. Richardson doesn't make any assertion that the choice to prosecute him under federal law was based on any impermissible classification.

Thus, the court rejects each ground on which Mr. Richardson bases his § 2255 Motion to Vacate, Set Aside, or Correct a Sentence. That motion accordingly is denied. The court recognizes that Mr. Richardson has moved for an evidentiary hearing (Doc. 82) and for the appointment of counsel (Doc. 79). The court discusses those motions below.

### E.       Evidentiary Hearing

In his Reply (Doc. 82), Mr. Richardson broadly asserts that an "evidentiary hearing is definitely needed in order to address the facts." Doc. 82 at 1. While the court has decided Mr. Richardson's motion as a matter of law,[7] in an effort to liberally construe Mr. Richardson's pro

---

[7]       The court recognizes that some aspects of Mr. Richardson's motion are inherently factual. *See United States v. Nelson*, 579 F. Supp. 3d 1251, 1254 (D.N.M. 2022) (citing *United States v. Martin*, 163 F.3d 1212, 1214 (10th Cir. 1998)) ("it is the jury who must decide the ultimate issue of fact—whether the individual 'was engaged in the performance of federal duties.'"). But the plea agreement and PSR agree on the relevant facts necessary to decide the core contention at issue on this motion. As explained in this section, the challenge Mr. Richardson's motion makes doesn't do enough to challenge those facts.

se filings, the court ventures to discern which facts Mr. Richardson's broad request for an evidentiary hearing could encompass.

A court must hold an evidentiary hearing on a § 2255 motion unless "'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting 28 U.S.C. § 2255(b)). A § 2255 petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence. *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009). "A court need not grant an evidentiary hearing where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact." *United States v. Cervantes-Samaniego*, No. 07-20099-JWL, 2012 WL 1788141, at *1 (D. Kan. May 17, 2012).

Each of the motion's grounds rests on a combination of the following factual aspects of Mr. Richardson's conviction: (1) at the time of the incident there wasn't a federal marshal present; (2) CoreCivic held contracts with both USMS and the state of Kansas; (3) the victims didn't fall within the scope of § 1114 at the time of the attack; (4) the Biden Administration had cancelled the federal government's contract with CoreCivic before the attack; (5) and because Emanuel Robinson was charged under state statute, Mr. Richardson should have faced the same charges. Doc. 74-1. Because Mr. Richardson's motion is so broad, the court will review each of these aspects to determine whether an evidentiary hearing on any of them possibly could warrant relief.

*First*, the presence of a federal marshal. That presence is irrelevant to the success of Mr. Richardson's motion because "the physical presence of a federal agent at the time of the assault is not required" to bring a person within the scope of § 1114. *Ama*, 97 F. App'x at 902. So, any

13

evidence proving or disproving the presence of a federal agent during the attack would have no effect on Mr. Richardson's case.

*Second*, Mr. Richardson asserts that CoreCivic had state contracts, so its employees can't qualify as persons assisting federal employees. Doc. 74-1. But the victims' responsibility for both state and federal detainees doesn't affect whether they are encompassed by § 1114. *See above* § III.A. The "assisting such an officer" language in § 1114 inherently accounts for and includes situations where victims' duties are both local and federal—especially where they are acting pursuant to a contract with a federal agency.[8] Therefore, even a finding that CoreCivic had concurrent contracts with the state and federal government would not help Mr. Richardson's case.

*Third*, the court asks whether it needs evidence to determine whether the victims qualify as a "person assisting" a federal officer as required by § 1114. The answer is no. The "type of individual encompassed by § 1114 is a legal question for the court." *Ama*, 97 F. App'x at 901. Aside from the federal and state responsibilities of the victims, Mr. Richardson makes no factual allegations about the victims' roles at the prison that could bear on their § 1114 protection.

*Fourth*, liberally construed, Mr. Richardson alleges that, at the time of the attack, CoreCivic wasn't under contract with the USMS. *See* Doc. 74-1 ("In 2021/2022 the Biden administration cancelled all contracts with . . . CoreCivic."). But the court deems this contention inherently incredible. At the time of the attack Mr. Richardson, a federal pretrial detainee, was detained at a CoreCivic facility and overseen by CoreCivic correctional officers. Neither Mr. Richardson's status as a federal detainee nor his presence at the CoreCivic facility are disputed.

---

[8]    Many § 1114 cases involve victims that were employed by a state or local entity and nonetheless were held as assisting a federal officer or employee within the scope of the statute. *See, e.g., Ama*, 97 F. App'x 900 (employee at county detention center which had contracted with USMS); *Martin*, 1998 WL 909905 (local police detective deputized to participate in federal investigation).

His presence at that facility while a federal detainee shows that CoreCivic was, in fact, under contract with the USMS to house federal pretrial detainees at the time of the attack. Because a "court need not grant an evidentiary hearing where the factual allegations are . . . inherently incredible," the court declines to grant an evidentiary hearing based on this inherently incredible allegation. *Cervantes-Samaniego*, 2012 WL 1788141, at *1.

*Lastly*, Mr. Richardson relies heavily on Mr. Robinson's case. The court already has explained why Mr. Robinson's case is irrelevant to the merits of Mr. Richardson's motion. *See above* § III.B.

In sum, Mr. Richardson has not identified any facts that, if proven, would warrant relief from his conviction. Mr. Richardson's primary ground on which his motion rests is an inaccurate *legal* argument. Mr. Richardson's motion for an evidentiary hearing is therefore denied.

### F.       Motion to Appoint Counsel

Mr. Richardson also has requested the appointment of counsel. Doc. 79. Rule 8(c) of the Rules Governing Section 2255 Proceedings requires a court to appoint counsel only if an evidentiary hearing is warranted for a § 2255 motion. Here, because the court holds that no evidentiary hearing is necessary, this court is not required to appoint representation for Mr. Richardson under Rule 8(c).

"There is no constitutional right to counsel beyond the direct appeal of a criminal conviction[.]" *Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008). Courts provide representation to a financially eligible § 2255 movant if the "interests of justice so require[.]" 18 U.S.C. § 3006A(a)(2). To determine whether to appoint counsel, district courts consider "a variety of factors, including the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal

15

issues raised by the claims." *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  Whether to appoint counsel is left to the court's discretion.  *See* 28 U.S.C. § 2255(g) (referring to 18 U.S.C. § 3006A).

Mr. Richardson repeatedly reminds the court that he isn't familiar with the law.  *See, e.g.*, Doc. 74 at 12; Doc. 74-1.  But Mr. Richardson has stated his position clearly in his § 2255 motion and reiterated it in his reply.  The failure of Mr. Richardson's motion doesn't result from his inability to argue a viable legal theory—instead, the theory of his motion itself is fundamentally flawed.  His lack of familiarity with the law cannot excuse an invalid legal theory and transform it into a viable one.  Given the record, the court is confident that even a skillful lawyer couldn't successfully argue Mr. Richardson's theory.  Thus, considering the merits of the claims, the nature of the factual issues presented, the complexity of the legal issues raised, and Mr. Richardson's ability to present his claims, the court concludes that the interests of justice do not require appointment of counsel.  The court thus denies Mr. Richardson's motion to appoint counsel.

### G.    Motion to Proceed In Forma Pauperis on Appeal

In his Motion to Appoint Counsel, Mr. Richardson states that he "moves before the court 'In Forma Pauperis' requesting to be appointed counsel[.]"  Doc. 79 at 1.  He states that he requests this counsel for "all the appella[te] proceedings that lie ahead."  *Id.*  In an effort to liberally construe this pro se prisoner's filings, the court analyzes this aspect of Mr. Richardson's Motion to Appoint Counsel (Doc. 79) as a Motion to Proceed In Forma Pauperis (IFP) on Appeal.

The court denies this motion.  A movant is "not entitled to proceed IFP [if] he has failed to identify 'the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal.'"  *United States v. Sandoval*, 371 F. App'x 945, 949 (10th Cir. 2010)

16

(quoting *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812–13 (10th Cir. 1997)).  As the court has explained above, Mr. Richardson has not raised a reasoned, nonfrivolous argument and does not assert facts that support the issues he has raised.  Accordingly, this motion is denied.

## IV.        Conclusion

The court concludes that Mr. Richardson isn't entitled to relief on the claims asserted in his motion because the legal theory on which they rest is inaccurate.  Accordingly, the court denies Mr. Richardson's § 2255 motion.  The court also concludes that because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," Mr. Richardson is not entitled to an evidentiary hearing under 28 U.S.C. § 2255(b).  *See Galloway*, 56 F.3d at 1240 n.1 (quotation cleaned up).  And, as just explained, the court denies his requests for counsel and to proceed IFP on appeal.

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires the court to "issue or deny a certificate of appealability when it enters a final order adverse" to the petitioner.  A court may grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quotation cleaned up).  The court concludes that no reasonable jurist would find the court's assessment of Mr. Richardson's claims debatable or wrong.  The court thus declines to issue a certificate of appealability for Mr. Richardson's claims in his Motion to Vacate under 28 U.S.C. § 2255.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Richardson's Motion to Vacate, set Aside, or Correct a Sentence under 28 U.S.C. § 2255 (Doc. 74) and related request for an evidentiary hearing are denied.

17

**IT IS FURTHER ORDERED THAT** Mr. Richardson's Motion to Appoint Counsel

(Doc. 79) and Motion to Proceed In Forma Pauperis on Appeal are denied.

**IT IS SO ORDERED.**

**Dated this 20th day of July, 2026, at Kansas City, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**